McBRIDE, Judge.
Relator, Louis Wanner, seeks a writ of mandamus to coerce the Sheriff and Tax Collector of the Parish of Jefferson (hereinafter called “Sheriff”) and the Assessor of said parish to give their approval and verification to an affidavit executed by relator (under LSA-R.S. 47:1991) for the purpose of securing the cancellation of a *821 tax sale of certain property dated September 7, 1952, made by the Sheriff to Louis Carmadelle, Jr., and Stanley F. Hen-ning for delinquent state and parish taxes for 1951 on an assessment to relator on the ground that the property was public property and was erroneously assessed in the name of relator. Louis Carmadelle, Jr., and Stanley F. Henning, the tax purchasers, are also impleaded as defendants. The Sheriff filed an answer to the petition; the Assessor made no appearance and filed no pleadings; Carmadelle and Henning filed, among others, the exception of no cause or right of action to relator’s petition and also filed an answer.
After trial of the rule to show cause why the writ of mandamus should not be issued, the trial court rendered judgment in favor of relator and against the four defendants making peremptory the alternative writ of mandamus directed to the Sheriff and to the Assessor which commanded them to verify and approve relator’s affidavit above-described; defendants Carmadelle and Hen-ning were cast for costs.
No appeal was taken by the Sheriff or the Assessor; however, Carmadelle and Henning have appealed from the judgment to this court.
Relator claims he purchased prior to 1949 the ten lots of ground in Harlem Parkway Subdivision which are the subject of the above-referred-to tax sale; he testified that in the latter part of 1948 or early in 1949 he received a notice from the Board of Commissioners for the Pontchartrain Levee District directing him to vacate the property, and that in 1949 he was “compelled” to move therefrom;' that shortly thereafter levee construction work was commenced thereon. Relator further stated that he was informed by the then Assessor that it would not be necessary that he pay any further taxes on the property. Nevertheless, the property was assessed for 1951 taxes to Louis Wanner, relator, at which time, according to relator, the levee had been completed and the property was under complete control and in possession of the Board of Commissioners of the Pontchartrain Levee District. On September 17, 1952, the ten lots were sold for delinquent taxes for 1951, Carmadelle and Henning becoming the tax adjudicatees thereof, and they have been paying each year’s taxes on the lots since their acquisition. Relator stated that he filed suit in St. James Parish against the Board of Commissioners of the Pontchartrain Levee District seeking payment for the value of his property which had been appropriated, and that after twelve years of litigation and negotiation he has never been paid for the property; however, he has reached an agreement with the Levee District to pay him approximately $11,000 on the condition that he secure a cancellation of the tax sale to Carmadelle and Henning. The record reflects that the Pontchartrain Levee District has utilized about nine-tenths of relator’s property for levee purposes.
In executing the above-mentioned affidavit and presenting it to the Sheriff and the Assessor for the Parish of Jefferson for verification and approval, relator seeks to have the tax sale cancelled under LSA-R.S. 47:1991, which reads in part as follows:
“Upon a statement of the facts made under oath, verified and approved by the assessor and collector of the parish or.district in which the property is situated, that the assessment is a clerical error, or an erroneous or double assessment, or that the property is exempt by the constitution from taxation, the affidavit being accompanied by the rendition made by the taxpayer on such property for the current year, the tax commission may authorize and direct the collector to cancel the assessment on the roll on file in his office. When such notification is issued, a copy shall be furnished to the auditor who shall authorize and direct the recorder of mortgages to erase and cancel the inscription of the tax mortgage. * * *
*822 In case property erroneously assessed has been sold for taxes and adjudicated to a third party, the auditor shall authorize and direct the recorder of mortgages to cancel the sale. * * * ”
The affidavit executed by relator which the Sheriff and the Assessor refused to sign reads as follows:
“State of Louisiana, Parish of Jefferson
Before me, the undersigned authority, personally came and appeared:
LOUIS WANNER
whose assessment appears on Page.... of Ward.of the Parish of Jefferson who, being duly sworn, deposes and says:
That on September 17, 1952, the following described property was sold at State Tax Sale to Louis Carmadelle under the following description:
10 Lots, Jefferson Parish, Harlem Parkway Subdivision. Lots 19, 20, 21, 22 and 23; and Lots 14, 15, 16, 17 and 18 of Square No. 53.
This tax sale was registered in C.O.B. 332, Folio 152.
That the said property is the same property appropriated by the Pontchartrain Levee District for the construction of the levee along the shores of Lake Pontchartrain. This appropriation was effective on December 7, 1948 and March 24, 1949, and the said property was and has been under the exclusive control of the Board of Commissioners of the Pontchartrain Levee District continuously since that time, and inasmuch as the Levee District is a public corporation, the said property was not subject to taxation in 1951 or 1952 or any time subsequent to its becoming public property, and inasmuch as the said property was not subject to taxation subsequent to December 7, 1948 and March 24, 1949, the above tax sale is erroneous and should be annulled and cancelled.
Louis Wanner
Signature of Taxpayer or Agent.
Sworn to and subscribed before me-this 8th day of January, 1962.
Guy L. Deano, Jr.
Notary Public.
Approved .
Assessor.
Approved .
Sheriff and Tax Collector.”'
There is no question that Louis Carmadelle, Jr., and Stanley F. Henning, the owners of the tax title, are necessary and vital parties, it being elemental that every party who may be affected by a decree must be made a party to the suit because no one should be condemned without a hearing. See State ex rel. Woods v. Register of State Land Office, 189 La. 69, 179 So. 38. Their status being such, they had the right to effect the appeal from the judgment perpetuating the alternative writ of mandamus. As their tax title may be affected by the verification and approval of the affidavit, they are privileged to raise any defense to the action for the mandamus that could have been raised by the public officials named as defendants.
In our opinion the exception of no right or cause of action pleaded on behalf of Carmadelle and Henning is well founded and should have been sustained by the trial court.
A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. LS A-C.C.P. arts. 3861 and 3863.
In Houeye v. St. Helena Parish School Board, 213 La. 807, 35 So.2d 739, the Supreme Court said:
“The writ of mandamus is defined in the Code of Practice to be ‘an order *823 issued in the name of the State by a tribunal of competent jurisdiction, and addressed to an individual or corporation, or court of inferior jurisdiction, ■directing it to perform some certain act belonging to the place, duty or ■quality with which it is clothed.’ Arti-lle 829. It only lies to compel the performance of duties that are purely ministerial in nature, and when they are •so clear and specific that no element ■of discretion is left in their performance. When the acts or duties are ■such that they necessarily call for the ■exercise of judgment and discretion by the officer or body at whose hands their performance is required, this remedy will not lie. State ex rel. Daboval v. Police Jury, 39 La.Ann. 759, 2 So. 305; Badger v. New Orleans, 49 La.Ann. 804, 21 So. 870, 37 L.R.A. 540. * * *»
Relator attempts to compel by the writ of mandamus the performance of a purely discretionary act on the part of the Sheriff and the Assessor of the Parish of Jefferson and in such case the remedy sought will not lie. In this case public officials were requested to verify and approve facts contained in relator’s affidavit which facts cannot be verified from the records of their respective offices. It appears from the transcript that there are no records in the Sheriff’s office which reflect there was an appropriation of the property by the Pont•chartrain Levee District or that a levee has been constructed thereon or that the ten lots which relator owned have been put to ■public uses of any kind. The record contains a conveyance certificate which the Assessor requested from the Clerk of Court, .and this reflects there is no inscription of .any appropriation of relator’s property by the Levee District. In order to verify and .approve the affidavit it would be necessary for the Sheriff and the Assessor to make an independent investigation of the status of the property. In other words, said officials would have to seek out evidence dehors official records showing that there was an appropriation, the date thereof, and the use of the property for the public purpose. Furthermore, relator is requesting that said officials be coerced into verifying and approving a legal conclusion advanced by himself that the tax sale is erroneous and should be annulled and cancelled. Whether the tax sale is valid is a legal question which the Sheriff and the Assessor should not be called upon to decide especially in view of the fact that the applicability of the five-year peremption established by Const. 1921, Art. X, § 11, LSA, must be determined. Moreover, the whole of relator’s property was not appropriated and ten percent thereof remained in his ownership. How said portion may be affected by the tax sale is a matter that may be the subject of serious litigation.
In the case of State ex rel. Warren Realty Co., Inc. v. Montgomery, La.App., 43 So.2d 33 (writs refused February 13, 1950), our predecessor, in a case similar to this, refused to mandamus the defendant officials involved to sign such an affidavit as is now presented to us. The court said therein:
“Obviously the verification and approval of the foregoing facts would involve an exercise of discretion on the part of the defendants herein and, if there is discretion in a public official, in the sense that he, in his judgment, may or may not perform the act which is demanded of him, then mandamus will not lie, * * * ”
 The judgment insofar as it runs against the Sheriff and the Assessor is now final by virtue of no appeal having been taken by said defendants therefrom, and we are powerless to disturb the judgment in that respect. However, we are authorized by LSA-C.C.P. art. 2164 to render any judgment which is just, legal and proper upon the record on appeal, and we feel that inasmuch as the judgment perpetuating the writ of mandamus is erroneous, we should amend said judgment so as to protect the interests of the appellants.
*824 The exception of no cause or right of action interposed by appellants to relator’s action is now maintained, and insofar as the judgment runs against appellants, Carma-delle and Henning, it is reversed; and the judgment is amended so as to provide that relator’s action insofar as it relates to Carmadelle and Henning is dismissed at relator’s cost; the judgment is further amended by adding a final paragraph thereto to the effect that should the defendant officials comply with the order of mandamus, their doing so will in no wise adversely affect or jeopardize any of the rights of appellants, Carmadelle and Henning, and as thus amended and in all other respects, the judgment appealed from is affirmed. Relator is to bear the costs of this appeal.
Reversed in part; amended and affirmed in part.